UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

PAUL TANNER,

                              Plaintiff,

              -vs-                                    13-CV-746-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

───────────────────────────────────

APPEARANCES:   KENNETH R. HILLER, ESQ., Amherst, New York, for Plaintiff

               WILLIAM J. HOCHUL, JR., United States Attorney (JOANNE
               JACKSON, Special Assistant United States Attorney, of Counsel),
               Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of United States District Judge William M. Skretny dated April 23, 2015 (Item 20).

        Plaintiff Paul Tanner initiated this action on July 19, 2013, pursuant to the Social

Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of

the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI")

benefits under Title II and Title XVI of the Act, respectively.  Both parties have moved for

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure

(see Items 13, 17).  For the following reasons, plaintiff's motion is denied, and the

Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on July 10, 1963 (Tr. 137).[1]  He filed an application for SSDI benefits on August 30, 2010, and for SSI benefits on September 9, 2010, alleging disability due to diabetes, glaucoma, arthritis, depression, rotary cuff surgery, arm and leg pain, eye surgery, high blood pressure, feet numbness, and Charcot foot, with an onset date of December 3, 2007 (later amended to July 19, 2010) (Tr. 25, 133-36, 137-40, 152).  The applications were denied administratively on December 10, 2010 (Tr. 89-96).  Plaintiff requested a hearing, which was held on March 15, 2012 before Administrative Law Judge ("ALJ") Eric Glazer (Tr.  39-88).  Plaintiff appeared and testified at the hearing, and was represented by counsel.

On March 29, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 22-38).  Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified as arthritis, diabetes, diabetic retinopathy, diabetic neuropathy, and right shoulder pain status post rotator cuff surgery, while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 27-29).  The ALJ also found plaintiff's depression to be "nonsevere," based on his review of the psychiatric evidence of record revealing no more than mild limitation in the ability to perform basic mental work activities (*id.*).  The ALJ then discussed the evidence regarding

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

the functional limitations caused by plaintiff's impairments, including plaintiff's testimony and written statements about his symptoms;  treatment notes, imaging reports, and other objective medical records; the opinion of consultative examining physician Donna Miller, D.O.; and the physical residual functional capacity assessment of state agency review analyst R. Bostaph, and determined that plaintiff had the residual functional capacity ("RFC") to perform work at the "sedentary"[2] exertional level, except for work requiring reaching above the shoulder with the right or left arm (Tr. 29-32).   Based on this assessment, the ALJ determined that plaintiff would not be able to return to his past relevant work, but considering his age (47 as of the amended onset date), limited education (11th grade), work experience, and RFC, would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and using Rule 201.18 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr.  33-34).

The ALJ's decision became the final decision of the Commissioner on May 22, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

---

[2]"Sedentary work" is defined in the regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to develop the record by obtaining intelligence and vision consultative examinations; (2) failed to properly assess the severity of plaintiff's mental impairment; (3) failed to properly assess plaintiff's physical RFC; and (4) failed to consult a vocational expert to determine the extent to which plaintiff's inability to reach above his shoulders erodes the occupational base. *See* Items 17-2, 19.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Items 13-1, 15.

## DISCUSSION

I.    **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or

mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ

determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Glazer determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since July 19, 2010, the alleged

onset date (Tr. 27).  At step two, the ALJ determined that plaintiff's physical impairments are "severe" as that term is defined in the regulations because they cause "more than minimal functional limitations and interfere with [plaintiff's] ability to perform some basic work-related activities" (*id.*).  The ALJ also determined that plaintiff's medically determinable mental impairment (depression) was "nonsevere" under the criteria set out in the regulations for evaluating mental disorders[3] (Tr. 27-29), relying on the findings in the report of consultative examiner Sandra Jensen, Ph.D., who conducted a psychiatric evaluation of plaintiff on November 17, 2010 (Tr. 353-57), and the psychiatric review technique form ("PRTF") and mental functional capacity assessment furnished by state agency review psychiatrist Hillary Tzetzo, M.D., dated December 8, 2010 (363-80).

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment (Tr. 29).

The ALJ then found that plaintiff had the RFC for sedentary work, except for work activity requiring reaching above the shoulder with either arm (Tr. 29).  In making this finding, the ALJ considered the objective medical evidence in the record, along with the opinions of the consultative examining sources and plaintiff's hearing testimony regarding his activities of daily living and the functional limitations caused by the symptoms of his

---

[3]To satisfy this criteria, the claimant must show (among other things) that his or her impairment resulted in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(1-4); *see also* §§ 12.02(B), 12.03(B), 12.04(B), 12.06(B), 12.07(B), 12.08(B)  (Paragraph "B" criteria).

physical and mental impairments (Tr. 12-15).   Based upon his consideration of this evidence, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, but plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were "not credible" to the extent they are inconsistent with the ALJ's RFC assessment (Tr. 32).  With regard to the opinion evidence, the ALJ noted that the record contained no medical opinions from any treating or examining source indicating functional limitations greater than those assessed, and attributed "great weight" to Dr. Miller's consultative examiner's opinion that plaintiff has "mild limitations with prolonged standing and walking" and "with repetitive reaching, pushing, and pulling," and is "status post shoulder repair" (Tr. 360).

At step four of the sequential evaluation, the ALJ found that given plaintiff's RFC for sedentary work with limited reaching, plaintiff would be unable to return to his past relevant work as a medical assistant/phlebotomist (Tr. 33; *see* Tr. 50-54, 196, 353).  At step five, the ALJ found that plaintiff was not under a disability as defined in the Act, relying on Rule 201.18 of the Grids as a framework for determining that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, considering his RFC, age, education and work experience (Tr.  33-34).

## IV.   Plaintiff's Motion

### A.   Further Development of the Record: Consultative Examinations

Plaintiff contends that the ALJ failed to discharge his duty to affirmatively develop the record by ordering consultative medical examinations to determine the extent of functional limitations caused by plaintiff's cognitive impairment and diabetic retinopathy.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)).   To discharge this duty, the ALJ has the discretion under the regulations to order a consultative examination in order to obtain further medical evidence for a determination about whether the claimant is disabled.   *See* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."); *see also Serianni v. Astrue*, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010) (citing *Hughes v. Apfel*, 992 F. Supp. 243, 248 (W.D.N.Y.1997)).   The regulations also recognize that the ALJ may be *required* to order a consultative examination when necessary "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim."   20 C.F.R. §§ 404.1519a, 416.919a; *see Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000) ("The regulations require that the ALJ must normally order a consultative examination when a conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved …."); *Hughes*, 992 F. Supp. at 248 ("Several courts have held ... that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision.").   However, the ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need to do so. *McDowell v. Colvin*, 2013 WL 1337152,

at *4 (N.D.N.Y. Mar. 11, 2013), *report and recommendation adopted*, 2013 WL 1337131 (N.D.N.Y. Mar. 29, 2013); *see also Cruz v. Shalala*, 1995 WL 441967, *5 (S.D.N.Y. July 26, 1995) ("The right to a post-hearing consultative examination exists only where a claimant's medical sources cannot or will not provide sufficient medical evidence regarding [the] impairment for a determination about whether the claimant is disabled." (citing 20 C.F.R. § 404.1517)).

Here, the court's review of the record as a whole reveals sufficient medical evidence for the ALJ to determine the level of functional limitation caused by plaintiff's alleged cognitive and vision impairments, without the need for further consultative evaluations. With regard to plaintiff's alleged cognitive impairment, the ALJ thoroughly discussed Dr. Jensen's November 17, 2010 consultative psychological evaluation report, which noted that plaintiff's manner of relating, social skills, and overall presentation was adequate; his attention, concentration, and memory skills appeared to be "mildly impaired due to some unknown cognitive impairment," but premorbid intellectual functioning was "probably in the above average range" (Tr. 355).   He was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks with supervision, make appropriate decisions, relate adequately with others, and deal with stress appropriately (Tr. 356).   Dr. Jensen concluded that the results of the consultative evaluation were consistent with mild cognitive dysfunction that did not in and of itself interfere with plaintiff's ability to function on a daily basis (*id.*).   She recommended an "organicity evaluation," while noting that "it is not likely the claimant has significant cognitive deficits" (*id.*).   As cases within the Second Circuit have repeatedly recognized, "[a]

consultative physician's opinion may constitute substantial evidence in support of the ALJ's determination." *Finney ex rel. B.R. v. Colvin*, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995)).

The ALJ also relied on Dr. Tzetzo's PRTF and mental functional capacity assessment, based primarily on his review of Dr. Jensen's findings, noting that while Dr. Jensen had recommended further cognitive evaluation, she had clarified that it was not likely that plaintiff had significant cognitive deficits (*see* Tr. 379). Dr. Tzetzo found no mention of cognitive problems in any of the other medical evidence in the record, and found "no noted issues that would prevent [plaintiff] from working" (*id.*). Dr. Tzetzo stated that, in his opinion, plaintiff's problems were primarily "[p]hysical" (*id.*), and he provided the following functional assessment:

> Based on the evidence (and taking into consideration any of the claimant's alleged physical problems): the claimant should be able to understand and follow work directions in a work setting (with low public contact), maintain attention for such work tasks, relate adequately to a work supervisor for such work tasks, and use judgment to make work related decisions in a work setting (with low public contact) now, in my opinion.

(*Id.*). These findings and opinions were properly considered by the ALJ (*see* Tr. 28); indeed, the regulations require adjudicators to do so, expressly recognizing that state agency medical consultants are " highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see Florek v. Comm'r of Soc. Sec.*, 2009 WL 3486643, at *11 (N.D.N.Y. Oct. 21, 2009).

In addition to the findings and opinions of Drs. Jensen and Tzetzo, the record also contains the report of a mental status assessment performed at the Erie County Medical

Center emergency department on October 26, 2011, during admission protocol to assess plaintiff's complaints of headaches and blurred vision (*see* Tr. 473-84). The report indicated normal findings with respect to judgment and insight; orientation to time, place and person; recent and remote memory; and mood and effect (*see* Tr. 483), and the discharge summary dated October 28, 2011, made no mention of any symptoms, treatment, or history of cognitive impairment (*see* Tr. 522-25).

With regard to plaintiff's vision, the ALJ referred to a report from the New York Eye Center dated October 4, 2010, indicating a diagnosis of diabetic retinopathy bilaterally, with limited visual acuity (Tr. 348-52), and a "Report of Contact" with the state agency review analyst noting that, as of October 18, 2010, plaintiff could see "okay" (Tr. 172). In addition, during his consultative internal medicine examination on November 17, 2010, plaintiff reported his history of vision problems, but also reported a range of activities of daily living that were not limited by his vision (*see* Tr. 359). Dr. Miller reported plaintiff's vision as 20/70 in both eyes on a Snellen chart at 20 feet, but did not otherwise indicate any limitation of work related activities (*see* Tr. 360).

Based on this review, it is clear that the treatment records, reports from consultative medical examiners and state agency review physicians, and other objective medical evidence in the record provided a sufficient evidentiary basis for the ALJ's assessment of plaintiff's mental and physical abilities to do basic work activities. Accordingly, the court finds that the ALJ adequately discharged his duty to develop the record in accordance with the requirements of the regulations, without the need to order additional consultative medical examinations.

**B.**    **Assessment of Severity of Plaintiff's Mental Impairment**

Plaintiff also contends that the ALJ failed to properly assess the severity of plaintiff's mental impairment at step two of the sequential evaluation, and in doing so, failed to properly weigh and evaluate the opinion of Dr. Tzetzo that plaintiff's mental impairment is "severe."   In the Second Circuit, courts consider an ALJ's assessment at step two as limited only to "screen out *de minimis* claims."  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995); *Wilson v. Colvin*, 2015 WL 1003933, at *19 (W.D.N.Y. Mar. 6, 2015) ("The Second Circuit has held that the step-two severity test 'may do no more than screen out *de minimis* claims.' " (citing *Dixon*, 54 F.3d at 1030)).   Thus, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality ... [with] no more than a minimal effect on an individual's ability to work.' "  *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985)).

In this case, in making his determination that plaintiff's cognitive impairment was non-severe, the ALJ gave full consideration to the findings and opinions of both the consultative examining psychologist (Dr. Jensen) and the state agency review psychiatrist (Dr. Tzetzo) as evidence of plaintiff's "mild cognitive dysfunction" which caused no more than minimal interference with plaintiff's ability to perform work-related activity (*see* Tr. 356, 379).   As discussed above, and as confirmed by the court's review of the record as a whole, this determination was made in conformity with the requirements of the regulations and is supported by substantial evidence.

Notwithstanding plaintiff's characterization of Dr. Tzetzo's opinion, nowhere does Dr. Tzetzo indicate in his functional capacity assessment that plaintiff suffers from a "severe" mental impairment (*see* Tr. 379).  To the contrary, Dr. Tzetzo clearly states his opinion that plaintiff's primary problems were related to his physical condition, and that his "mild" cognitive impairment would not significantly limit his ability to function successfully in a work setting (*see id.*).  This opinion was adequately reflected in the "Rating of Functional Limitations" section of the PRTF completed by Dr. Tztetzo, indicating plaintiff's "mild" degree of limitation in the areas of restriction of activities of daily living and difficulties in maintaining social functioning; "moderate" degree of limitation in the area of difficulties in maintaining concentration, persistence or pace; and no episodes of deterioration of extended duration (*see* Tr. 373; *see also* note 3, *infra*).

Moreover, the Second Circuit has held that any error caused by the ALJ's failure to properly consider an impairment's severity at step two is harmless where the ALJ found other severe impairments and proceeded with the subsequent steps of the sequential evaluation.  *See Reices-Colon v. Astrue*, 2013 WL 1831669, at *1 (2d Cir. 2013) (summary order; citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010).

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to properly consider the severity of plaintiff's cognitive impairment.

## C.    RFC

Plaintiff next contends that the ALJ failed to properly assess plaintiff's physical RFC. This contention must also be rejected.

"Residual functional capacity" is defined as "the most you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  It is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96–8p, 1996 WL 374184, *2 (S.S.A. 1996).  "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)), *aff'd*, 579 F. App'x 27 (2d Cir. 2014).  The RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *see also Hamlin v. Colvin*, 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014).

In this case, as amply demonstrated by the discussion above, ALJ Glazer's physical RFC assessment was based upon full consideration of the objective medical evidence in the record, the findings and opinions of consultative examining sources and review analysts, and plaintiff's hearing testimony regarding his activities of daily living and the functional limitations caused by the symptoms of his physical and mental impairments. The ALJ's analysis of the evidence was clearly set forth in a separate section of the written decision (Tr. 32) with the necessary specificity to allow subsequent reviewers to determine the ALJ's rationale and evidentiary support for his findings, in accordance with the requirements of the regulations, administrative rulings, and federal case law.

Accordingly, plaintiff is not entitled to relief on the ground that the ALJ failed to properly assess plaintiff's physical RFC.

-17-

**D.    Vocational Expert**

Finally, plaintiff contends that the ALJ committed error at the fifth step of the sequential evaluation by relying on the Grids as a framework for finding plaintiff "not disabled," without consulting a vocational expert to determine the extent to which plaintiff's inability to reach above his shoulders erodes the occupational base.

As discussed above, the Commissioner ordinarily meets her fifth step burden to show that there is other substantial gainful work in the economy plaintiff can perform by resorting to the Grids, *Bapp*, 802 F.2d at 604; however, exclusive reliance on the Grids is inappropriate where the full extent of the claimant's physical limitations are not taken into account–particularly "where a claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." *Rosa*, 168 F.3d at 78.  In such cases, the regulations require the ALJ to consult a vocational expert in order to show that jobs exist in the national economy which the claimant can obtain and perform.  *Id.*; *see also Bapp*, 802 F.2d at 603.

This requirement is not automatic upon the "mere existence" of a non-exertional impairment; "instead, the non-exertional limitation must cause an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.' " *Eralte v. Colvin*, 2014 WL 7330441, at *14 (S.D.N.Y. Dec. 23, 2014) (quoting *Bapp*, 802 F.2d at 605–06).

Here, the ALJ found that plaintiff's reaching limitations had little or no effect on the occupational base of unskilled sedentary work (Tr. 33).  As revealed by the discussion

above, and as confirmed by the court's review of the record as a whole, this finding is supported by substantial evidence.  Thus, plaintiff's nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Grids as a framework for decisionmaking was permissible.

Accordingly, the ALJ's failure to call or consult a vocational expert in this case does not constitute legal error of the type requiring reversal or remand for further proceedings.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 17) is denied, the Commissioner's motion for judgment on the pleadings (Item 13) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner and to close this case.

So ordered.

_____/s/ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   October 21, 2015
p:\pending\2013\13-746.ssdi.si.sept25.2015